FILED IN OPEN COURT

3/19/2014

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLEDIVISION

CLERK, U. S. DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE, FLORIDA

UNITED STATES OF AMERICA

v.                                    CASE NO. 3:13-cr-141-J-32JRK

SHELTON THOMAS BELL

## PLEA AGREEMENT

Pursuant to Fed. R. Crim. P. 11(c), the United States of America, by A. Lee Bentley, III, United States Attorney for the Middle District of Florida, and the defendant, SHELTON THOMAS BELL, and the attorney for the defendant, Lisa Call, mutually agree as follows:

### A.    Particularized Terms

1.    Count(s) Pleading To

The defendant shall enter a plea of guilty to Count One and Two of the Indictment.  Counts One charges the defendant with conspiracy to provide material support to terrorists in violation of 18 U.S.C. § 2339A.  Count Two charges the defendant with attempting to provide material support to terrorists in violation of 18 U.S.C. § 2339A.

2.    Maximum Penalties

Counts One and Two each carry a maximum sentence of not more than 15 years imprisonment, a fine of not more than $250,000, or both the imprisonment and the fine, a term of supervised release of any term of years or life, and a mandatory special assessment in the amount of $100 due on the date

Defendant's Initials _STB_                         AF Approval _BJ_

of sentencing.  A violation of the terms and conditions of supervised release could result in additional imprisonment of not more than five years and the possibility of an additional term of supervised release.

The cumulative maximum penalty for both Count One and Count Two is a maximum sentence of not more than 30 years imprisonment, a fine of not more than $500,000, or both the imprisonment and the fine, a term of supervised release of any term of years or life, and mandatory special assessments in the amount of $200 due on the date of sentencing.  A violation of the terms and conditions of supervised release could result in additional imprisonment of not more than ten years and the possibility of an additional term of supervised release.

With respect to certain offenses, the Court shall order the defendant to make restitution to any victim of the offense(s), and with respect to other offenses, the Court may order the defendant to make restitution to any victim of the offense(s), or to the community, as set forth below.

3.    Elements of the Offense(s)

The defendant acknowledges understanding the nature and elements of the offenses with which defendant has been charged and to which defendant is pleading guilty.

The elements of Count One are:

First:        Two or more persons agreed to commit an offense
              against the United States, namely:  to provide
              material support or resources or to conceal or

Defendant's Initials _S𝘛𝘉_                    2

disguise the nature, location, source, or ownership of the material support or resources;

Second:   The defendant knew the unlawful purpose of the plan and wilfully joined in it; and

Third:   The defendant did so intending that such support or resources be used in preparation for or in carrying out violations of Title 18, United States Code, Section 956 (conspiracy to commit at a place outside the United States an act that would constitute the offense of murder, kidnaping, or maiming, if committed in the special maritime and territorial jurisdiction of the United States, where one of the conspirators committed an act within the jurisdiction of the United States to effect an object of the conspiracy).

The elements of Count Two are:

First:   The defendant knowingly intended to commit an offense against the United States, namely: to provide material support or resources or to conceal or disguise the nature, location, source, or ownership of material support or resources; and

Second:   The defendant did so intending that such support or resources be used in preparation for or in carrying out violations of Title 18, United States Code, Section 956 (conspiracy to commit at a place outside the United States an act that would constitute the offense of murder, kidnaping, or maiming, if committed in the special maritime and territorial jurisdiction of the United States, where one of the conspirators committed an act within the jurisdiction of the United States to effect an object of the conspiracy); and

Third:   The defendant's intent was corroborated by his taking a substantial step toward committing the crime.

4.   No Further Charges

If the Court accepts this plea agreement, the United States

Attorney's Office for the Middle District of Florida agrees not to charge defendant

Defendant's Initials _STB_                    3

with committing any other federal criminal offenses known to the United States

Attorney's Office at the time of the execution of this agreement, related to the

conduct giving rise to this plea agreement.

    5.    <u>Acceptance of Responsibility - Three Levels</u>

At the time of sentencing, and in the event that no adverse

information is received suggesting such a recommendation to be unwarranted,

the United States will not oppose the defendant's request to the Court that the

defendant receive a two-level downward adjustment for acceptance of

responsibility, pursuant to USSG §3E1.1(a).  The defendant understands that this

recommendation or request is not binding on the Court, and if not accepted by

the Court, the defendant will not be allowed to withdraw from the plea.

Further, at the time of sentencing, if the defendant's offense level prior to

operation of subsection (a) is level 16 or greater, and if the defendant complies

with the provisions of USSG §3E1.1(b) and all terms of this Plea Agreement,

including but not limited to, the timely submission of the financial affidavit

referenced in Paragraph B.4., the United States agrees to file a motion pursuant

to USSG §3E1.1(b) for a downward adjustment of one additional level.  The

defendant understands that the determination as to whether the defendant has

qualified for a downward adjustment of a third level for acceptance of

responsibility rests solely with the United States Attorney for the Middle District of

Florida, and the defendant agrees that the defendant cannot and will not

challenge that determination, whether by appeal, collateral attack, or otherwise.

Defendant's Initials _STD_        4

6. <u>Concurrent Sentence</u>.

At the time of sentencing, the United States will not oppose any request by the defendant that the sentence in this case run concurrent to any sentence that might be imposed by the State of Florida in the case described as <u>State of Florida v. Shelton Bell</u>, Case No. 2013-CF-001124-AXXX-MA, in the Circuit Court of the Fourth Judicial Circuit, in and for Duval County, Florida. The defendant understands that the Government's agreement in this paragraph is not binding on the Court, and if the Court refuses to grant any request for a concurrent sentence, the defendant will not be allowed to withdraw from his guilty plea.

**B.    Standard Terms and Conditions**

1. <u>Restitution, Special Assessment and Fine</u>

The defendant understands and agrees that the Court, in addition to or in lieu of any other penalty, <u>shall</u> order the defendant to make restitution to any victim of the offense(s), pursuant to 18 U.S.C. § 3663A, for all offenses described in 18 U.S.C. § 3663A(c)(1); and the Court may order the defendant to make restitution to any victim of the offense(s), pursuant to 18 U.S.C. § 3663, including restitution as to all counts charged, whether or not the defendant enters a plea of guilty to such counts, and whether or not such counts are dismissed pursuant to this agreement. The defendant further understands that compliance with any restitution payment plan imposed by the Court in no way precludes the United States from simultaneously pursuing other statutory remedies for

collecting restitution (18 U.S.C. § 3003(b)(2)), including, but not limited to, garnishment and execution, pursuant to the Mandatory Victims Restitution Act, in order to ensure that the defendant's restitution obligation is satisfied.

On each count to which a plea of guilty is entered, the Court shall impose a special assessment pursuant to 18 U.S.C. § 3013. The special assessment is due on the date of sentencing. The defendant understands that this agreement imposes no limitation as to fine.

      2.   <u>Supervised Release</u>

      The defendant understands that the offense(s) to which the defendant is pleading provide(s) for imposition of a term of supervised release upon release from imprisonment, and that, if the defendant should violate the conditions of release, the defendant would be subject to a further term of imprisonment.

      3.   <u>Sentencing Information</u>

      The United States reserves its right and obligation to report to the Court and the United States Probation Office all information concerning the background, character, and conduct of the defendant, to provide relevant factual information, including the totality of the defendant's criminal activities, if any, not limited to the count(s) to which defendant pleads, to respond to comments made by the defendant or defendant's counsel, and to correct any misstatements or inaccuracies. The United States further reserves its right to make any

Defendant's Initials *SDB*         6

recommendations it deems appropriate regarding the disposition of this case, subject to any limitations set forth herein, if any.

    4.    <u>Financial Disclosures</u>

        Pursuant to 18 U.S.C. § 3664(d)(3) and Fed. R. Crim. P. 32(d)(2)(A)(ii), the defendant agrees to complete and submit to the United States Attorney's Office within 30 days of execution of this agreement an affidavit reflecting the defendant's financial condition. The defendant promises that his/her financial statement and disclosures will be complete, accurate and truthful and will include all assets in which he/she has any interest or over which the defendant exercises control, directly or indirectly, including those held by a spouse, dependent, nominee or other third party. The defendant further agrees to execute any documents requested by the United States needed to obtain from any third parties any records of assets owned by the defendant, directly or through a nominee, and, by the execution of this Plea Agreement, consents to the release of the defendant's tax returns for the previous five years. The defendant similarly agrees and authorizes the United States Attorney's Office to provide to, and obtain from, the United States Probation Office, the financial affidavit, any of the defendant's federal, state, and local tax returns, bank records and any other financial information concerning the defendant, for the purpose of making any recommendations to the Court and for collecting any assessments, fines, restitution, or forfeiture ordered by the Court. The defendant expressly authorizes the United States Attorney's Office to obtain current credit reports in

Defendant's Initials  *STB*        7

order to evaluate the defendant's ability to satisfy any financial obligation imposed by the Court.

5.    Sentencing Recommendations

It is understood by the parties that the Court is neither a party to nor bound by this agreement.  The Court may accept or reject the agreement, or defer a decision until it has had an opportunity to consider the presentence report prepared by the United States Probation Office.  The defendant understands and acknowledges that, although the parties are permitted to make recommendations and present arguments to the Court, the sentence will be determined solely by the Court, with the assistance of the United States Probation Office.  Defendant further understands and acknowledges that any discussions between defendant or defendant's attorney and the attorney or other agents for the government regarding any recommendations by the government are not binding on the Court and that, should any recommendations be rejected, defendant will not be permitted to withdraw defendant's plea pursuant to this plea agreement.  The government expressly reserves the right to support and defend any decision that the Court may make with regard to the defendant's sentence, whether or not such decision is consistent with the government's recommendations contained herein.

6.    Defendant's Waiver of Right to Appeal the Sentence

The defendant agrees that this Court has jurisdiction and authority to impose any sentence up to the statutory maximum and expressly waives the

Defendant's Initials _STB_                8

right to appeal defendant's sentence on any ground, including the ground that the Court erred in determining the applicable guidelines range pursuant to the United States Sentencing Guidelines, except (a) the ground that the sentence exceeds the defendant's applicable guidelines range as determined by the Court pursuant to the United States Sentencing Guidelines; (b) the ground that the sentence exceeds the statutory maximum penalty; or (c) the ground that the sentence violates the Eighth Amendment to the Constitution; provided, however, that if the government exercises its right to appeal the sentence imposed, as authorized by 18 U.S.C. § 3742(b), then the defendant is released from his waiver and may appeal the sentence as authorized by 18 U.S.C. § 3742(a).

7.    Middle District of Florida Agreement

It is further understood that this agreement is limited to the Office of the United States Attorney for the Middle District of Florida and cannot bind other federal, state, or local prosecuting authorities, although this office will bring defendant's cooperation, if any, to the attention of other prosecuting officers or others, if requested.

8.    Filing of Agreement

This agreement shall be presented to the Court, in open court or in camera, in whole or in part, upon a showing of good cause, and filed in this cause, at the time of defendant's entry of a plea of guilty pursuant hereto.

Defendant's Initials _STB_                    9

9.   <u>Voluntariness</u>

        The defendant acknowledges that defendant is entering into this agreement and is pleading guilty freely and voluntarily without reliance upon any discussions between the attorney for the government and the defendant and defendant's attorney and without promise of benefit of any kind (other than the concessions contained herein), and without threats, force, intimidation, or coercion of any kind.  The defendant further acknowledges defendant's understanding of the nature of the offense or offenses to which defendant is pleading guilty and the elements thereof, including the penalties provided by law, and defendant's complete satisfaction with the representation and advice received from defendant's undersigned counsel (if any).  The defendant also understands that defendant has the right to plead not guilty or to persist in that plea if it has already been made, and that defendant has the right to be tried by a jury with the assistance of counsel, the right to confront and cross-examine the witnesses against defendant, the right against compulsory self-incrimination, and the right to compulsory process for the attendance of witnesses to testify in defendant's defense; but, by pleading guilty, defendant waives or gives up those rights and there will be no trial.  The defendant further understands that if defendant pleads guilty, the Court may ask defendant questions about the offense or offenses to which defendant pleaded, and if defendant answers those questions under oath, on the record, and in the presence of counsel (if any), defendant's answers may later be used against defendant in a prosecution for

Defendant's Initials  *STB*                    10

perjury or false statement.  The defendant also understands that defendant will be adjudicated guilty of the offenses to which defendant has pleaded and, if any of such offenses are felonies, may thereby be deprived of certain rights, such as the right to vote, to hold public office, to serve on a jury, or to have possession of firearms.

10.   Factual Basis

Defendant is pleading guilty because defendant is in fact guilty. The defendant certifies that defendant does hereby admit that the facts set forth in the attached "Factual Basis," which is incorporated herein by reference, are true, and were this case to go to trial, the United States would be able to prove those specific facts and others beyond a reasonable doubt.

11.   Entire Agreement

This plea agreement constitutes the entire agreement between the government and the defendant with respect to the aforementioned guilty plea and no other promises, agreements, or representations exist or have been made to the defendant or defendant's attorney with regard to such guilty plea.

Defendant's Initials  _STB_                    11

12.   Certification

The defendant and defendant's counsel certify that this plea

agreement has been read in its entirety by (or has been read to) the defendant

and that defendant fully understands its terms. *(handwritten notation)*

DATED this ___19th___ day of ~~February~~ March, 2014. *STB JC*

_____
SHELTON THOMAS BELL
Defendant

_____
LISA CALL
Attorney for Defendant

A. LEE BENTLEY, III
United States Attorney

_____
MAC D. HEAVENER, III
Assistant United States Attorney
Deputy Chief, Jacksonville Division

_____
MARA M. KOHN
Trial Attorney Counter Terrorism Section
National Security Division,
Department of Justice

_____
JULIE HACKENBERRY
Assistant United States Attorney
Chief, Jacksonville Division

Defendant's Initials _STB_                    12

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

UNITED STATES OF AMERICA

v.                                          CASE NO. 3:13-cr-141-J-32JRK

SHELTON THOMAS BELL

PERSONALIZATION OF ELEMENTS

**COUNT ONE**

1.      Do you admit that beginning in or about May 2012 and continuing until at least on or about July 18, 2013, in the Middle District of Florida and elsewhere, that you, Shelton Thomas Bell, and others, agreed to commit an offense against the United States, namely: to provide material support or resources or to conceal or disguise the nature, location, source, or ownership of material support or resources, as charged in the indictment?

2.      Do you admit that you did so intending that such support or resources be used in preparation for or in carrying out violations of Title 18, United States Code, Section 956 (conspiracy to commit at a place outside the United States an act that would constitute the offense of murder, kidnaping, or maiming, if committed in the special maritime and territorial jurisdiction of the United States, where one of the conspirators committed an act within the jurisdiction of the United States to effect an object of the conspiracy), in violation of 18 U.S.C. § 2339A?

Defendant's Initials _STB_                    1

3.      Do you admit you knew the unlawful purpose of the plan and willfully joined in it?

## COUNT TWO

1.      Do you admit that beginning in or about May 2012, and continuing until at least on or about July 18, 2013, in the Middle District of Florida, and elsewhere, you knowingly intended to commit an offense against the United States, namely: to attempt to provide material support or resources or to conceal or disguise the nature, location, source, or ownership of material support or resources?

2.      Do you admit you did so intending that such support or resources be used in preparation for or in carrying out violations of Title 18, United States Code, Section 956 (to commit at a place outside the United States an act that would constitute the offense of murder, kidnaping, or maiming, if committed in the special maritime and territorial jurisdiction of the United States), in violation of 18 U.S.C. § 2339A?

3.      Do you admit your intent was corroborated by you taking substantial steps to assist you in committing the crime, including without limitation training in the United States, purchasing a one-way airline ticket to Israel, traveling overseas to the country of Jordan and purchasing airfare to Oman to facilitate your intent to travel to Yemen to join Ansar al-Sharia and participate in armed conflict and killing others in the country of Yemen and elsewhere?

Defendant's Initials _S̶T̶B̶_                    2

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

UNITED STATES OF AMERICA

v.                                          CASE NO. 3:13-cr-141-J-32JRK

SHELTON THOMAS BELL

## FACTUAL BASIS

SHELTON THOMAS BELL ("BELL"), at times alleged in the indictment, resided in the Middle District of Florida.

Beginning in approximately May 2012 and continuing through at least July 18, 2013, BELL agreed and conspired with a juvenile and at least one other individual to train in the Jacksonville area to prepare themselves as combatants for overseas violent jihad (for purposes of this agreement, the phrase "violent jihad" means armed conflict), to then travel from Jacksonville, Florida to the Middle East for the ultimate purpose of providing personnel, namely BELL and the juvenile, to terrorists, including members of Ansar al-Sharia in Yemen, to receive further training and deadly weapons from Ansar al-Sharia, and to then engage in violent jihad against, and to kill, others in the country of Yemen and elsewhere.  At all relevant times, BELL and the juvenile knew that Ansar al-Sharia had engaged in, and continued to engage in, terrorist activity and the killing of other persons in foreign countries, including both Yemen and Syria.

In May 2012, BELL introduced the juvenile to the concept of traveling overseas for the purpose of engaging in violent jihad and further

Defendant's Initials _STB_                      1

inspired the juvenile and another person with the teachings of an Al Qaida spokesperson, Anwar al-Awlaki ("al-Awlaki"). BELL, the juvenile, and the other individual would play audio and video recordings of these lectures by al-Awlaki, agreed with much of his teachings, and resolved to travel overseas to participate in violent jihad. BELL suggested travelling to Yemen to fight because of al-Awlaki's teachings that all young people should travel to Yemen to take up the fight. BELL, the juvenile, and another individual talked about the idea and agreed to go to Yemen to "take up the fight" and join the mujahidin there.

BELL and the juvenile subsequently agreed to a plan in which they would travel to Israel to visit the juvenile's sick Grandmother and then make Hajj. This was an agreed cover story for their eventual plan to travel to Yemen to join Ansar al-Sharia and others engaged in violent jihad in that country and elsewhere. As part of the deception, BELL and the juvenile told others, including their parents, they were traveling overseas to attend Hajj, to study, and to get an education.

By July 2012, BELL, the juvenile, and another individual began taking actions to train for their unlawful plan. For example, BELL, the juvenile, and another individual conducted mental training to prepare them for fighting in Yemen before departing from Jacksonville. This included watching al-Awlaki videos and looking at images of dead Muslims.

Another part of the training took place on July 4, 2012, when BELL and another individual conducted a late-night "jihadi training mission" that

Defendant's Initials _STB_                    2

involved the destruction of religious statues in a multi-denominational cemetery located in Jacksonville, Florida.  BELL and the other individual created a visual and audio recording of this mission.  In preparation for the mission, BELL and the other individual dressed in all black clothing, wore tactical gloves, masks, and wrapped their shoes in black duct tape to avoid leaving footprints.  BELL brought a loaded 9 mm pistol with him on the mission to use "in case any kuffar want to cause any trouble."  During the drive to the cemetery, BELL indicated that scholars would say, "You're a terrorist" and that they would be demonized as terrorists, "[j]ust as they do the Taliban, just as they do the brothers in Somalia, just as they do the brothers everywhere across the globe."

The training also included firearm training on State of Florida land adjoining BELL's father's home in Duval County, Florida.  BELL, the juvenile, and another individual made two trips to a home-made firing range to conduct target practice and prepare themselves as fighters for overseas battles.  These training sessions took place on July 4, 2012, and July 10, 2012, and included impromptu battlefield lessons conducted by BELL and participated in by the juvenile and another.  The training sessions were recorded, and BELL intended for another individual to upload the recordings to the internet to show that a person like BELL had gone before to fight and participate in violent jihad and to recruit others in joining and emulating him.

During the firearm training on July 4, 2012, BELL provided beer cans to the juvenile and another and stated, "Gotta start off with something small

Defendant's Initials _STB_                    3

before you fight off something big." BELL referred to this firearm training as "the actions of Jihad." At one point during this training, the juvenile commented about the smell of beer, and BELL stated, "It may stink, but how you think the blood is going to smell?"

During another recorded firearm training session on July 10, 2012, Bell stated that they had come to "practice jihad" and jokingly referred to what they were doing as "mujahidin training" and by saying, "Its American terrorist." This training again consisted of target shooting by BELL, the juvenile, and another individual. At one point during this training, BELL taped an American flag to a plywood board, and the juvenile commented, "You see that. Real target. BELL then replied, "[n]ot the American people, just the flag and the Government." During the remainder of this recorded training, BELL provided firearm instructions, and told another individual to "crouch like you would be in the battlefield." At another point, the three overheard an airplane, and BELL stated, "Stand down. Like if we were on the battlefield, this is what we've got to watch out for is them drones." At the conclusion of this training, BELL placed the American flag on a machete, burnt it, and commented that the flag was "burning to the ground by the mujahidin's hands."

On July 26, 2012, BELL created a recording of himself in the same wooded area. In this recording, BELL dressed himself in a white gown, wore black boots, black knee and elbow pads, a black tactical vest, and a black turban. BELL began this recording by making various statements. He noted that "we're

Defendant's Initials _STB_                    4

partaking in the training of jihad" and "actively seeking participation in jihad." He
stated, "Yes fighting is included. Your lives may be at stake." He noted with
approval comments from "Sheik Osama Bin Laden." He also noted that "[w]e will
be the ones to liberate this entire planet of the Kuffar." He specifically referenced
a jihadist flag flying over locations such as the White House in Washington, D.C.
and the Prime Minister's Castle in Canada. He concluded this video by stating,
"Any message to the youth who are listening now or listening through the
camera, yeah, uh, then there's only one message. That message is what are
you doing for the sake of Allah? What lengths are you willing to go?" Bell
concluded this recording with footage of himself shooting at targets and
exploding various devices, including a device he termed a "frag grenade."

BELL and the juvenile also planned to take footage of each other
actually participating in armed conflict in the Middle East once they made it there
and began fighting. The purpose of this footage would be to upload to the
internet to assist in recruiting other youth to travel and join in armed conflict.
To facilitate his travel, on September 11, 2012, Bell placed an order and paid for
an expedited passport with a company called Expresspassports.com. BELL then
completed an Application for a U.S. Passport on September 13, 2012, at a
United States Post Office in Jacksonville. On September 20, 2012, the
Department of State issued a passport to BELL.

In September 2012, in Duval County, Florida, the juvenile gave
BELL money for his airline ticket. On September 21, 2012, BELL used an on-line

Defendant's Initials _STB_                    5

travel service to purchase one-way plane tickets for himself and the juvenile from Jacksonville, Florida to Tel Aviv, Israel. This was to be the beginning of the planned travel to Yemen.

On September 25, 2012, BELL and the juvenile left Jacksonville, Florida and flew to New York, Poland, and Tel Aviv, Israel where they were detained by Israeli officials and deported to Poland. From Poland, BELL and the juvenile traveled to Jordan to stay with the juvenile's relatives. While in Jordan and in furtherance of their plan, BELL and the juvenile contacted another person to assist in their plan of joining up with Ansar al-Sharia. BELL and the juvenile also bought airline tickets to the country of Oman, believing they would fly to Oman and walk across the border to Yemen to join the armed conflict there and participate in killing others. As part of the conspiracy, BELL and the juvenile intended to travel to Yemen where they intended to fight violent jihad for Ansar Al-Sharia. BELL and the juvenile were ready to fight, ready to kill others, and ready to die.

While in Jordan, the juvenile purchased a cellular telephone to assist in communicating with others to facilitate their unlawful plan.

While in Jordan, BELL and the juvenile also made additional recordings documenting discussions between them. During a recording dated October 25, 2012, BELL acknowledged both he and the juvenile's original intentions and that they had kept those intentions quiet by stating, "If we told him our original intentions, yea we wanna go fight, guess what, everyone would

Defendant's Initials _SB_          6

disagree about it."  Later, BELL confirmed that the original plan "was to go straight to Yemen."

During and in furtherance of the conspiracy, BELL and the juvenile took steps to avoid detection by law enforcement, including using a cover story for the trip overseas and staying "undercover" during the overseas travel, which meant not informing people of their true intentions for their travel and limiting their communications.

Ultimately, BELL and the juvenile were deported from Jordan to the United States.  BELL initially requested to be deported to Turkey, but instead was returned to the United States on November 21, 2012.  At that time, BELL spoke with agents and provided a non-custodial statement.  During his statement, among other things, BELL acknowledged that he and the juvenile had purchased plane tickets to Oman with the intention of entering Yemen. BELL stated, "If you ask me if was going for jihad in Yemen, I say yes."  BELL stated that he and the juvenile would have fought for whatever group was fighting against those who were persecuting Muslims.  BELL confirmed that Ansar al-Sharia was the group they sought to join, but explained that several groups were affiliated with Ansar al-Sharia, including al Qa'ida and the Taliban.

Defendant's Initials _STB_                    7